**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| REV. BILLY'S CHOP SHOP, INC., | ) | Civil Action No. 2021-cv-06931 |
| Plaintiff, | ) | |
| v. | ) | |
| FACEBOOK, INC. d/b/a INSTAGRAM, a Delaware Corporation | ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S OPPOSED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS PENDING ARBITRATION</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1
BACKGROUND ..... 2
I. RBCS Sues Meta Despite Having Agreed To Arbitrate ..... 2
II. The Arbitration Provision In The Instagram Terms Provides Consumers With Fair Procedures For The Resolution Of Individual Disputes ..... 5
ARGUMENT ..... 5
I. The FAA Requires Enforcement Of Arbitration Agreements ..... 5
II. The Arbitration Provision In The Terms Of Use Should Be Enforced ..... 6
A. The Parties Validly Agreed To Arbitrate ..... 6
B. The Parties' Arbitration Agreement Encompasses RBCS's Claims ..... 7
C. The Arbitration Clause Is Not Unconscionable ..... 8
1. RBCS's Challenges To Provisions Of Instagram's Terms Other Than The Arbitration Clause Itself Are For The Arbitrator To Decide, Not The Court ..... 8
2. Instagram's Terms Are Not Unconscionable ..... 9
III. This Action Should Be Stayed Pending Arbitration ..... 12
CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldine Bldg. II v. Jetz Serv. Co.*,
2020 WL 7863406 (Ill. App. Ct. Dec. 30, 2020)....11, 12

*Ashland Jewelers, Inc. v. NTR Metals, LLC*,
2011 WL 1303214 (N.D. Ill. Mar. 31, 2011)....9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....5, 11

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 473 (1986)....8

*Brown v. Luxottica Retail N. Am., Inc.*,
2010 WL 3893820 (N.D. Ill. Sept. 29, 2010)....10

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)....9

*Carbajal v. H & R Block Tax Servs., Inc.*,
372 F.3d 903 (7th Cir. 2004)....7

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003)....6

*Gore v. Alltel Commc'ns, LLC*,
666 F.3d 1027 (7th Cir. 2012)....7

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000)....11

*Hubbert v. Dell Corp.*,
359 Ill. App. 3d 976, 835 N.E.2d 113 (2005)....9

*Keller v. United States*,
58 F.3d 1194 (7th Cir. 1995)....6

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
174 F.3d 907 (7th Cir. 1999)....7

*Kinkel v. Cingular Wireless LLC*,
223 Ill.2d 1 (2006)....9

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019)....................8

*Lehmann v. Nat'l Pump & Compressor, Ltd.*,
No. 13 CV 3866, 2013 WL 12323613 (N.D. Ill. Aug. 14, 2013)....................9

*Moran v. Calumet City*,
2021 WL 2823086 (N.D. Ill. July 7, 2021)....................6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................8

*PacifiCare Health Sys., Inc. v. Bok*,
538 U.S. 401 (2003)....................11

*Pain Treatment Centers of Illinois v. SpectraLab Sci., Inc.*,
2017 WL 4340125 (N.D. Ill. Sept. 30, 2017)....................9

*Phoenix Ins. Co. v. Rosen*,
242 Ill.2d 48 (2011)....................10

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010)....................9

*Sanders v. JGWPT Holdings, LLC*,
2017 WL 4281123 (N.D. Ill. Sept. 27, 2017)....................11

*Soo Line R. Co. v. St. Louis Sw. Ry. Co.*,
125 F.3d 481 (7th Cir. 1997)....................6

*State Farm Mut. Auto. Ins. Co. v. Electrolux Home Prod., Inc.*,
891 F. Supp. 2d 906 (N.D. Ill. 2012)....................6, 7

*United States v. Borrero*,
771 F.3d 973 (7th Cir. 2014)....................6

*United States v. Hornaday*,
392 F.3d 1306 (11th Cir. 2004)....................6

**Statutes**

Federal Arbitration Act, 9 U.S.C. §§ 1-16....................2, 5, 6, 12

9 U.S.C. § 2....................5

9 U.S.C. § 3....................12

## INTRODUCTION

This lawsuit belongs in arbitration, as the plaintiff itself admits in its complaint.

Plaintiff Rev. Billy's Chop Shop, Inc. ("RBCS") is a hair salon. Dkt. 1-2 (Second Amended Complaint ("SAC")), ¶ 1. It has sued Facebook, Inc. (now known as Meta Platforms, Inc. ("Meta")), which owns and operates the Instagram social media platform, over the closure of RBCS's Instagram account, *@revbillyschopshop*. *Id.* ¶¶ 8-22. Instagram's Terms of Use include an arbitration provision. *Id.* ¶¶ 25-26 & SAC Ex. A. RBCS alleges that in February 2021 and again in March 2021, it "demand[ed] resolution or arbitration of" the dispute (*id.* ¶¶ 13, 19), and that after several unsuccessful efforts to resolve the dispute, Meta did not file an arbitration against itself on RBCS's behalf (*id.* ¶ 28).

Recognizing that this dispute is subject to arbitration, the first count in RBCS's complaint seeks an order that Meta "be compelled to institute and pay for all arbitration and administration costs related to this dispute." *Id.* ¶ 28. The other two counts seek damages and attorneys' fees and costs for breach of contract and a declaration that various other provisions in the Terms are "unlawful and unenforceable." *Id.* ¶¶ 30-51. Although RBCS's claims are meritless because RBCS has no right to reactivation of its properly closed account, the claims all belong in arbitration.[1]

The parties agree that RBCS is bound by the arbitration provision in the Instagram Terms of Use attached to the complaint. SAC Ex. A. Moreover, both parties agree that the arbitration provision covers the claims asserted here. Specifically, RBCS expressly seeks an order compelling Meta to initiate and pay for arbitration of RBCS's claims (*id.* ¶ 28), confirming its

[1] On January 28, 2022, counsel for Meta conferred with plaintiff's counsel to ask plaintiff to initiate arbitration with the American Arbitration Association ("AAA") in lieu of proceeding with this litigation. Plaintiff's counsel declined to do so, necessitating this motion.

concession that the claims are arbitrable. To be sure, Meta cannot file an arbitration against itself on behalf of RBCS any more than a defendant can sue itself in court on behalf of a plaintiff. But all agree that, under the Terms, "any cause of action"—including the ones asserted here—"must be resolved by arbitration on an individual basis." *Id.* SAC Ex. A at 7. Accordingly, RBCS should have initiated arbitration of its claims rather than filing suit in court.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires RBCS to comply with its agreement to arbitrate. When, as here, a plaintiff files suit in breach of an arbitration agreement, the FAA mandates that the case be stayed pending the outcome of arbitration in accordance with the agreement. That mandate applies here: the action should be ordered to arbitration, and all judicial proceedings should be stayed pending the outcome of that arbitration.

## BACKGROUND

### I. RBCS Sues Meta Despite Having Agreed To Arbitrate.

RBCS alleges that it operates a hair salon in Cook County, Illinois and that it has been using Instagram since approximately 2015 to "generate[] hundreds of posts marketing and advertising the services it provided, often through the use of customers or models who received RBCS's services." SAC ¶ 8. When RBCS created its Instagram account, it accepted Instagram's Terms of Use, which RBCS attached as Exhibit A to its Second Amended Complaint. Indeed, RBCS agrees that the "terms of service [ ] between RBCS and Instagram represent a binding and enforceable contract in that Instagram offered its terms to RBCS; RBCS accepted those terms, and the agreement is supported by consideration[.]" *Id.* ¶ 25. And Count 1 of the Second Amended Complaint *requests* that "Instagram, Inc. be compelled to institute" arbitration relating to this dispute. *Id.* ¶ 28.

The Terms of Use give a detailed description of "How [the parties] Will Handle

Disputes," such as this one. SAC Ex. A at 7. The Terms state that the parties "agree that *any* cause of action, legal claim, or dispute between" the parties "arising out of or related to these Terms or Instagram," except for actions filed in small claims court, "*must* be resolved by arbitration on an individual basis." *Id.* (emphasis added). The Terms also expressly provide that claims involving Meta's affiliates (including Instagram) must be arbitrated: "Our past, present, and future affiliates and agents, including Instagram LLC, can invoke our rights under this agreement [to arbitrate] in the event they become involved in a dispute." *Id.* at 6. The Terms further explain that before initiating arbitration, a party must first provide the other with "a written Notice of Dispute." *Id.* at 8. "If we are unable to resolve a dispute within thirty (30) days after the Notice of Dispute is received, you or we may commence arbitration." *Id.*

Despite this agreement to arbitrate, on June 1, 2021, RBCS filed a complaint in the Cook County Circuit Court for the State of Illinois, Chancery Division, which Meta removed to this Court.[2] In the operative complaint, RBCS alleges that after it sent a Notice of Dispute to Instagram regarding the second closure of its Instagram account, although Instagram investigated the issue, it neither restored the account nor opened an arbitration against itself on RBCS's behalf. SAC ¶¶ 16-22.

RBCS asserts three claims. The first, for "Declaratory Relief," seeks "judgment in its favor declaring the rights of the parties, including that Instagram, Inc. be compelled to institute and pay for all arbitration and administration costs," (Count I), SAC ¶¶ 24-28. The second count, also for "Declaratory Judgment," seeks the Court's declaration that various provisions in the Terms "are unlawful and unenforceable" (Count II), *id*. ¶¶ 29-34. Specifically, RBCS

[2] RBCS's original and first amended complaints in state court sought only declaratory relief. Dkt. 1 at ¶¶ 3-4. On December 30, 2021, Meta timely removed the action after RBCS filed an amended complaint on November 22, 2021 to add a claim for breach of contract seeking damages greater than $75,500. *See* Dkt. 1 at 5.

challenges the following provisions of the Terms: (i) a clause "limit[ing] RBCS's damages to $100";[3] (ii) a clause "prevent[ing] RBCS . . . from filing a class action against Instagram"; (iii) a clause "require[ing] RBCS and other Instagram users to indemnify it and pay its reasonable attorneys' fees";[4] (iv) a clause "requir[ing] Instagram users to file any non-arbitration lawsuit in California"; and (v) a clause specifying that "the terms of service apply to minors as young as thirteen years old." SAC ¶ 31.

RBCS's third claim is for breach of contract (Count III), seeking recovery of two types of damages. *Id.* ¶¶ 35-41. First, RBCS requests $50,400 in past damages based on its allegations that plaintiff "has suffered damages of $50,400 as a direct and proximate result of Defendant's breach of [contract]" when Meta allegedly failed to reinstate plaintiff's Instagram account. *Id.* ¶ 51. Second, it requests an award of future damages. Specifically, RBCS alleges that "[o]n average," plaintiff's Instagram account "generated $4,200 in revenue per month" in sales and that "[t]hese damages continue to accrue and increase for each month [plaintiff] is not able to access its account." *Id.* As Meta explained in its notice of removal, the request for future damages causes the total request for damages to exceed $75,000. Dkt. 1 ¶¶ 16-20.

---

[3] This provision states that "[o]ur responsibility for anything that happens on the Service (also called 'liability') is limited as much as the law will allow. . . . Our aggregate liability arising out of or relating to these Terms will not exceed the greater of $100 or the amount you have paid us in the past twelve months." SAC Ex. A at 7.

[4] This provision states: "You agree to defend (at our request), indemnify and hold us harmless from and against any claims, liabilities, damages, losses, and expenses, including without limitation, reasonable attorneys' fees and costs, arising out of or in any way connected with these Terms or your use of the Service. You will cooperate as required by us in the defense of any claim. We reserve the right to assume the exclusive defense and control of any matter subject to indemnification by you, and you will not in any event settle a claim without our prior written consent." SAC Ex. A at 5.

**II. The Arbitration Provision In The Instagram Terms Provides Consumers With Fair Procedures For The Resolution Of Individual Disputes.**

The arbitration provision in Instagram's Terms includes several features that ensure that customers who choose arbitration may simply and efficiently resolve disputes:

- **Cost-free arbitration for claims up to $75,000:** "We will pay all arbitration filing fees, administration and hearing costs, and arbitrator fees for any arbitration we bring or if your claims seek less than $75,000 and you timely provide [Meta] with a Notice of Dispute";
- **Low-cost arbitration for claims for $75,000 or more:** If an Instagram user brings an arbitration seeking greater than $75,000 in damages, under the AAA fee schedule for consumer arbitrations (which applies here), the user's share of fees is generally limited to a $200 filing fee. Decl. of Alina Artunian ("Artunian Decl.") Ex. 1 at 1 (AAA fee schedule);
- **Small claims court option:** Either party may bring a claim in small claims court as an alternative to arbitration;
- **Flexible consumer procedures:** Arbitration will be conducted under the Consumer Arbitration Rules of the AAA, which the AAA designed with consumers in mind; and
- **Full individual remedies available:** The arbitrator can award any form of relief on an individualized basis that a court could award under applicable law.

SAC Ex. A at 7-8.

**ARGUMENT**

**I. The FAA Requires Enforcement Of Arbitration Agreements.**

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

The FAA applies to any written agreement to arbitrate that appears in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. As the Supreme Court has

explained, the FAA constitutes "the broadest permissible exercise of Congress' Commerce Clause power," and covers not only interstate transactions, but also intrastate transactions of a type that "in the aggregate" would have a "substantial effect on interstate commerce." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (internal quotation marks omitted).

Here, both criteria are met: (i) Meta's arbitration provision is in writing (*see* SAC Ex. A); and (ii) online social media platforms, such as Instagram, are an instrumentality of interstate commerce. *See, e.g., United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("[T]he Internet is an instrumentality of interstate commerce."); *United States v. Borrero*, 771 F.3d 973, 975 (7th Cir. 2014) (same). Moreover, the parties acknowledged in the Terms of Use that the "arbitration provision is governed by the Federal Arbitration Act." SAC Ex. A at 6.

## II. The Arbitration Provision In The Terms Of Use Should Be Enforced

### A. The Parties Validly Agreed To Arbitrate.

By bringing this action seeking to enforce the Terms of Use, RBCS cannot dispute the validity of the Terms it attached to its own complaint. Indeed, RBCS alleges that the "terms of service [ ] between RBCS and Instagram represent a *binding and enforceable contract*" and even asks the Court to *enforce* the arbitration clause and that "Instagram, Inc. be compelled to institute" arbitration. SAC ¶¶ 24-28. RBCS's admission that the Terms constitute a contract is legally binding. *Soo Line R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) (noting "the well-settled rule that a party is bound by what it states in its pleading"); *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them."); *Moran v. Calumet City*, 2021 WL 2823086, at *8 (N.D. Ill. July 7, 2021) (same). Thus, the first element of the analysis is satisfied. *See, e.g., State Farm Mut. Auto. Ins.*

*Co. v. Electrolux Home Prod., Inc.*, 891 F. Supp. 2d 906, 909 (N.D. Ill. 2012) ("In determining whether the claims fall within the scope of the arbitration agreement, [the Court] will accept as true the factual allegations in [plaintiff's] complaint.").

**B. The Parties' Arbitration Agreement Encompasses RBCS's Claims.**

The plain language of the arbitration provision covers RBCS's claims for breach of contract and to invalidate various clauses in the Terms. That arbitration provision states that the parties "agree that *any* cause of action, legal claim, or dispute between" the parties "arising out of or related to these Terms or Instagram," except for claims brought in small claims court, "*must* be resolved by arbitration on an individual basis." SAC Ex. A at 7 (emphasis added). RBCS's complaint "aris[es] out of [and is] related to . . . Instagram" (*id.*): it alleges "Defendant breached the [Instagram Terms of Use] on March 21, 2021, when it deactivated RBCS's account for no reason whatsoever, and Defendant has continued to be in breach of the [Terms] by refusing to reactive [*sic*] Plaintiff's account." SAC ¶ 40. RBCS's claims thus fall within the heartland of the disputes covered by the arbitration provision. Indeed, when faced with a similar provision requiring arbitration of "any claim or dispute . . . relating to" a party or action, the Seventh Circuit has observed that "[i]t would be hard to draft a broader [arbitration] clause." *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 904-05 (7th Cir. 2004). *See also Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1034–35 (7th Cir. 2012) ("Resolving, as we must, our doubt in favor of arbitrability," plaintiff's breach of contract claim "f[ell] within the scope of the [ ] arbitration clause" "[g]iven our broad reading 'arising out of and relating to'"); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909–10 (7th Cir. 1999) (describing an arbitration clause with the language "arising out of or relating to" as "extremely broad and capable of an expansive reach," and "necessarily creat[ing] a presumption of arbitrability").

Even if there were any doubt that RBCS's claims against Instagram fall within the scope of the arbitration agreement—and there is none—"as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also, e.g., Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417-19 (2019); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 473, 650 (1986).

**C. The Arbitration Clause Is Not Unconscionable.**

In its Second Amended Complaint, RBCS alleges that the Instagram Terms are "unlawful" and "overly burdensome" because (i) "they limit RBCS's damages to $100, but may require RBCS . . . to pay thousands of dollars in arbitration filing fees and administration costs"; (ii) "they prevent RBCS . . . from filing a class action against Instagram"; (iii) "they require RBCS and other Instagram users to indemnify it and pay its reasonable attorneys' fees"; (iv) "they require Instagram users to file any non-arbitration lawsuit in California"; and (v) "the terms of service apply to minors as young as thirteen years old." SAC ¶ 31. In essence, RBCS contends that various aspects of Instagram's Terms are unconscionable. But for the reasons explained below, those contentions are meritless.

**1. RBCS's Challenges To Provisions Of Instagram's Terms Other Than The Arbitration Clause Itself Are For The Arbitrator To Decide, Not The Court.**

As a threshold matter, four of the provisions that RBCS challenges are not contained in the arbitration provision and have nothing to do with the enforceability of the parties' arbitration agreement: the limitation on remedies, the indemnity requirement when a user's conduct exposes Meta to a lawsuit filed by a third party, the forum-selection clause, or allowing teenagers to sign

up for service. Accordingly, only the arbitrator may consider RBCS's contentions that these provisions are unenforceable.

As the Supreme Court has held, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). That is because "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). Under these principles, "the Court looks only to the validity of the arbitration agreement itself" when enforcing an agreement to arbitrate, not "a party's challenge to another provision of the contract." *Lehmann v. Nat'l Pump & Compressor, Ltd.*, 2013 WL 12323613, at *2 (N.D. Ill. Aug. 14, 2013) (quoting *Rent-A-Center*, 561 U.S. at 70).

**2. Instagram's Terms Are Not Unconscionable.**

Even if all of RBCS's challenges to Instagram's Terms were cognizable here, they all lack merit. To invalidate an agreement, plaintiff bears the burden of showing "either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless LLC*, 223 Ill.2d 1, 22 (2006); *see also Ashland Jewelers, Inc. v. NTR Metals, LLC*, 2011 WL 1303214, at *3 (N.D. Ill. Mar. 31, 2011) ("Unconscionability [ ] is an affirmative defense on which plaintiffs bear the burden of proof[.]"); *Pain Treatment Centers of Illinois v. SpectraLab Sci., Inc.*, 2017 WL 4340125, at *2 (N.D. Ill. Sept. 30, 2017) ("Plaintiffs oppose arbitration on the grounds of unconscionability . . . and bear the burden of showing that the arbitration clause at issue is unconscionable."); *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 989, 835 N.E.2d 113, 125 (2005) ("It is the plaintiffs' burden to prove that the arbitration agreement is unconscionable."). RBCS fails to establish either procedural or substantive unconscionability.

To begin with, RBCS, a business, does not allege that there was anything unfair about the manner in which it agreed to arbitration. Under Illinois law, procedural unconscionability "refers to a situation where the terms of a contract are so difficult to find or read that a plaintiff cannot be fairly said to have agreed to them." *Brown v. Luxottica Retail N. Am., Inc.*, 2010 WL 3893820, at *3 (N.D. Ill. Sept. 29, 2010) (citing *Kinkel*, 223 Ill.2d at 22). The relevant factors "include whether each party had the opportunity to understand the terms of the contract, whether important terms were hidden in a maze of fine print, and all of the circumstances surrounding the formation of the contract." *Phoenix Ins. Co. v. Rosen*, 242 Ill.2d 48, 60 (2011) (quotation marks omitted). RBCS does not allege that Instagram's Terms were "difficult to find or read." *Brown*, 2010 WL 3893820, at *3. Nor could it; RBCS attached the Terms to its complaint and has asserted a breach of contract claim. The Terms therefore form the basis for its allegations.

Moreover, although RBCS suggests that Instagram's Terms are substantively unconscionable, under Illinois law, they must demonstrate that "the terms are so one-sided as to oppress or unfairly surprise an innocent party." *Phoenix Ins.*, 242 Ill.2d at 60 (quotation marks omitted). RBCS cannot make this showing either.

First, RBCS's suggestion that the Terms "limit RBCS's damages to $100 but may require RBCS . . . to pay thousands of dollars in arbitration filing fees and administrative costs" is simply untrue. As explained above, the arbitration clause provides that Meta "pay[s] for all arbitration filing costs, administration and hearing costs, and arbitrator fees for *any* arbitration" if the claimant "seek[s] less than $75,000." SAC Ex. A at 8. And, for claims greater than $75,000, the AAA fee schedule limits a user's share of fees in a consumer arbitration to a $200 filing fee. *See* pp. 5 *supra*. "[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing

the likelihood of incurring such costs." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000). RBCS cannot meet that burden here given the AAA's fee schedule limits its share of arbitration costs to at most $200. Moreover, RBCS mischaracterizes the limitation of remedies: it limits a user's damages to "the greater of $100 or the amount you have paid us in the past twelve months." SAC Ex. A at 7. In the context of Instagram, which is generally a free service unless a user chooses to pay to promote his or her account, this sort of limitation is reasonable. But even if RBCS has a colorable argument that it is unenforceable (RBCS does not), the arbitrator has the power to set aside that limitation if it is unenforceable. As the Supreme Court has explained, when "we do not know how the arbitrator will construe the remedial limitation" in a contract, "the proper course is to compel arbitration" so that the arbitrator can decide the issue in the first instance. *PacifiCare Health Sys., Inc. v. Bok*, 538 U.S. 401, 407 (2003).

Second, the other provisions in the Terms that RBCS challenges—regarding indemnification if a third party sues Meta because of RBCS's conduct on Instagram, requiring lawsuits exempt from arbitration to be filed in California, allowing teenagers to use Instagram, and the waiver of class actions—are all simply inapplicable. RBCS has not been asked to indemnify Meta, the forum-selection clause has not been invoked, RBCS is not a teenager, and this lawsuit is not a class action.[5] A party cannot avoid enforcement of a contract because it might in theory be unenforceable in hypothetical situations that have not arisen. *See e.g.*, *Sanders v. JGWPT Holdings, LLC*, 2017 WL 4281123, at *7 (N.D. Ill. Sept. 27, 2017) ("Plaintiffs only speculate that the provision [in the arbitration agreement] would be unfair to them and [ ] speculation is not enough to show unconscionability"); *Aldine Bldg. II v. Jetz Serv. Co.*, 2020

[5] In any event, the challenge to the class waiver is frivolous; agreements to arbitrate on an individual basis are fully enforceable as a matter of federal law. *See Concepcion*, 563 U.S. at 351-52.

WL 7863406, at *4 (Ill. App. Ct. Dec. 30, 2020) ("speculation and hypotheticals . . . are not grounds for finding that the contract . . . is an unconscionable agreement").

**III. This Action Should Be Stayed Pending Arbitration.**

Under the FAA, when—as here—an arbitration provision covers a plaintiff's claims, the court "shall" compel arbitration and stay the lawsuit. *See* 9 U.S.C. § 3 ("If any suit or proceeding be . . . referable to arbitration, the court in which such suit is pending, upon being satisfied that the issue involved . . . is referable to arbitration . . . *shall* on application of one of the parties stay the trial of the action until such arbitration has been had . . .") (emphasis added). Accordingly, this matter should be stayed while RBCS arbitrates its claims.

## CONCLUSION

The Court should enter an order (i) compelling plaintiff RBCS to arbitrate its claims in accordance with its arbitration agreement; and (ii) staying this action pending the resolution of any such arbitration.

Dated: February 7, 2022

*/s/ Archis A. Parasharami*
Archis A. Parasharami
Kevin Ranlett (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
Telephone: (202) 263-3000
*aparasharami@mayerbrown.com*
*kranlett@mayerbrown.com*

Matthew D. Provance
MAYER BROWN LLP
71 Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-8598
*mprovance@mayerbrown.com*

Alina Artunian (*pro hac vice*)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
*aartunian@mayerbrown.com*

***Counsel for Defendant***

**CERTIFICATE OF SERVICE**

The undersigned certifies that on February 7, 2022, the foregoing Motion to Compel Arbitration was electronically filed with the Clerk of the Court using the CM/ECF system and that copies of the foregoing instrument were sent by email and first-class U.S. mail to counsel for plaintiff at the address and email address below:

Daniel I. Schlade
6232 N. Pulaski, # 300
Chicago, IL 60646
danschlade@gmail.com

*/s/ Archis A. Parasharami*
Archis A. Parasharami